Michael A. McGill SBN: 231613
mcgill@policeattorney.com
Carolina Veronica Diaz  SBN:263301
veronica@policeattorney.com
**LACKIE, DAMMEIER & MCGILL APC**
367 North Second Avenue
Upland, CA  91786
Telephone:  (909) 985-4003
Facsimile:  (909) 985-3299

Attorneys for Plaintiff-Petitioner
RUSSEL RUETZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Claim of RUSSELL RUETZ,<br><br>Plaintiff,<br><br>vs.<br><br>SANTA MONICA COMMUNITY COLLEGE DISTRICT, a municipal corporation; SANTA MONICA COLLEGE POLICE DEPARTMENT, an operating department thereof; ALBERT VASQUEZ, individually and as Police Chief; KURT TRUMP, individually and as Acting Chief/Sergeant; SHERYL AGARD, individually and as Secretary to the Chief of Police, JENNIFER JONES, individually and as Secretary; TARA CRITTENDEN, individually and as Dispatcher; and ROES 1-10,<br><br>Defendants. | Case No.: CV11-03921 JAK 9(Ex)<br><br>**PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff hereby responds to Defendants' Motion to Dismiss Plaintiffs First Amended Complaint (FAC) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Defendants' motion should be denied in that the FAC is more than specific enough to apprise each Defendant of the substance of the claims being asserted.

Further, Defendants' motion should be denied because Defendants seek to have the Court require Plaintiffs to spell out every possible detail of his claims in the pleading stage of this action. This amounts to dilatory conduct by Defendants. The FAC is sufficient under Rule 8. However, if the Court is inclined to grant Defendants' motion, Plaintiffs request an opportunity to amend the FAC.

### STATEMENT OF FACTS

Plaintiff's Background and Police Officer Association Activity

Plaintiff was hired by the SMC/Department in June 2005 to the position of police officer. Plaintiff has been a productive and highly successful member of the Police Department. Plaintiff has been a valuable asset to both the SMC/Department and the public which he serves [FAC, 16]. In or around 2008, Plaintiff suggested to the Department and other employees of the Department- the start up a union/association for its police officers. Plaintiff pioneered this endeavor and was ultimately elected as Parliamentarian for the Santa Monica College Police Officers Association ("POA") in or around 2010 [FAC, 17].

Right around the start- up of the POA, in or about 2008, Plaintiff decided to exercise his rights under the Peace Officer Bill of Rights ("POBR") and therefore requested a representative to be present at a meeting with the Chief of Police and the Vice President of the District [FAC, 18]. Shortly after Plaintiff exercised his

rights under the POBR, in March 2008, DEFENDANT, SERGEANT KURT TRUMP ("Trump"), stated to Plaintiff that "POBR is a joke" and that "people who exercise their rights under POBR should be fired". TRUMP also stated to Plaintiff that since he had requested a representative for a meeting, that TRUMP was "going to take this issue to a higher level". Plaintiff understood these comments to be harassing and threatening [FAC, 19].

Thereafter, On March 31, 2008, Plaintiff reported SERGEANT TRUMP'S actions and comments to the District/Department. After Plaintiff's report, TRUMP and other DEFENDANTS conduct towards Plaintiff worsened [FAC, 20]. After Plaintiff complained and filed a report of retaliation and harassment by TRUMP, in mid-April 2008, TRUMP told Plaintiff was told that he "was no longer going to be a detective". On May 1, 2008, Plaintiff was also denied administrative access to the department computer (Computer Aided Dispatch System also known as "CAD") because, according to Defendants, "[Plaintiff] couldn't be trusted". Previous to this incident, Plaintiff assisted in procuring the CAD and was assigned to setup the CAD by the prior Chief of Police. Moreover, after Plaintiff complained to the District/Department, he underwent numerous arbitrary and retaliatory write-ups [FAC, 21].

In 2008, Plaintiff, during a "confidential" department review with a clinical psychologist who works for Defendants, Manny Tau, Plaintiff was told to be honest about his feelings about the Department. Plaintiff stated that the Department had poor management and that Plaintiff had been mistreated. Plaintiff's review was then leaked to TRUMP. TRUMP told Plaintiff that because of the department review, Plaintiff "was a problem with the department" [FAC, 22].

Thereafter, since 2008, 2009, 2010 to the present, Defendant TRUMP would constantly harass Plaintiff and treat him different and apart from other

employees. TRUMP would berate Plaintiff with questions, embarrass Plaintiff in front of others and would randomly pull Plaintiff into his office and assign him odd and embarrassing tasks. TRUMP would tell Plaintiff that "[Plaintiff] doesn't know what he is doing", and would also make negative references to Plaintiff's "younger" age, stating that "[Plaintiff] is not capable of doing his job" and that "[Plaintiff] has no knowledge". At Department meetings, TRUMP would treat all employees, except for Plaintiff, with respect. At the meetings, TRUMP would yell at Plaintiff, in front of other employees, and scream to Plaintiff "to report to [his] office immediately!" [FAC, 23]. Plaintiff understands TRUMPS actions to be in direct retaliation for Plaintiff's reporting TRUMPS harassment and retaliation to the Department and also for Plaintiff's union start-up and activity [FAC, 24].

The Gag Order

On or around May 3, 2010, the Department and CHIEF VASQUEZ ("Chief Vasquez") placed Plaintiff on administrative leave with a gag order whereby Plaintiff could not contact any member of the Santa Monica College Police Department or any college employees without permission. On May 3, 2010, Plaintiff was not informed the reasons why he was being placed on administrative leave [FAC, 25]. The gag order hindered Plaintiff, the Parliamentarian of the POA, to communicate with his fellow board members and other members of the Association. Plaintiff was estopped from participating in any union activity and was also estopped from acting as Parliamentarian of the POA. Plaintiff was also hindered from communicating with his friends, who are members of the Santa Monica College Police Department and also who are College employees. The gag order is currently still in place [FAC, 26].

In or about June, 2010 the Department/District then went to Santa Monica Police Department to institute a complaint against Plaintiff so that SMPD would

issue a search warrant for Plaintiff's home. The search warrant was signed by a magistrate. It is Plaintiff's belief that the Department's complaint and search warrant were issued to further harass, retaliate and humiliate Plaintiff [FAC, 27].

<u>Race Discrimination, Harassment and Retaliation</u>

Plaintiff is a Caucasian officer and he works with several African-American employees, including Defendant Sasha Agard, Defendant Jennifer Jones, Sergeant Charles Bayes, and Defendant Tara Crittenden. From 2008 to 2010, Plaintiff has undergone discrimination, harassment and retaliation because of his Caucasian race from the following persons: Defendant Sasha Agard, Defendant Jennifer Jones, Sergeant Charles Bayes, and Defendant Tara Crittenden. Some examples are:

-In or about 2008 through 2010, an African-American Sergeant, Charles Bayes, told Plaintiff that he could not come inside the police station because he wasn't liked by the African-American employees;

- In or about 2008 through 2010, an employee of SMC, DEFENDANT SASHA AGARD, whom is an African American, frequently called/calls Plaintiff a "blue-eyed white devil". Agard also uses this term with other employees of the SMC/Department when referring to Plaintiff;

- In or about 2008 through 2010, an employee of SMC, DEFENDANT JENNIFER JONES, stated that Plaintiff was a "quintessential white boy and I hate him";

- In or about 2008 through 2010, JONES and AGARD constantly made/make racial comments and jokes to other employees at the SMC/Department regarding Plaintiff being Caucasian.

- In or about 2008 through 2010, an employee of SMC, DEFENDANT TARA CRITTENDEN, would constantly refer to Plaintiff as a "f*cking cracker"; and "white boy" [FAC, 28].

After hearing the numerous derogatory and discriminatory comments about Plaintiff, an SMC employee, Officer Mike Champagne reported the conduct to DEFENDANT TRUMP. DEFENDANT TRUMP responded to Officer Champagne with "[Plaintiff] deserves it". TRUMP did absolutely nothing when he was notified that Plaintiff was constantly being harassed and discriminated against because of his race [FAC, 29]. In early 2010, Plaintiff also complained/reported to DEFENDANT CHIEF VASQUEZ that Plaintiff was being discriminated against and harassed because of his race. VASQUEZ replied to Plaintiff, "You may be knocking on a door that you may not want to be knocking on, and that could be bad for your career". Plaintiff took this comment as a threat to his career. VASQUEZ failed to do anything to protect PLAINTIFF from discrimination and harassment [FAC, 30].

Just a short month after Plaintiff complained of race discrimination, on March 30, 2010, VASQUEZ placed Plaintiff on "administrative duty". Plaintiff was forced to do demeaning tasks not otherwise assigned to police officers, such as: cleaning, organizing storage containers and other various secretarial and janitorial duties. Plaintiff was also forced to report to DEFENDANTS AGARD and JONES, the same employees who had harassed Plaintiff because of his race. In the middle of 2010, Plaintiff notified VASQUEZ that he was filing a lawsuit. VASQUEZ told Plaintiff that "[Plaintiff] was not a proper fit [for SMC]" [FAC, 31-32].

///
///
///
///

## STANDARD OF REVIEW

In civil rights cases, a motion to dismiss must be scrutinized with care, and construing the pleadings liberally is particularly important in such cases. *Johnson v. State of Cal.*, 207 F. 3d 650, 653 (9th Cir. 2000).

The federal rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A motion to dismiss, pursuant to Rule 12(b)(6), tests the legal sufficiency of the claims stated in the complaint. It "is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997). Indeed, dismissal under Rule 12(b)(6) is proper only in "extraordinary" cases. *United States v. White*, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995) (quoting *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)).

In reviewing a Rule 12(b)(6) motion, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at n.8. With ambiguous inferences, the Court must adopt whichever inference supports a valid claim. *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101, 1109 (6th Cir. 1995). If dismissal is granted, leave to amend is "only denied if it is clear that amendment would be futile and 'that deficiencies of the complaint could not be cured by amendment'." *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996), (quoting *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam)).

**ARGUMENT**

**A.     Plaintiff Pled Facts Sufficient To State His FEHA Claims.**

As throughout their brief, Defendants lose sight of Plaintiff's burden at the pleading stage under Rule 8.  Defendants' expectations regarding specificity of pleading are unrealistic and contrary to Rule 8 requirements.  Plaintiffs should not be forced to prove their case prior to the discovery phase of this action.

**B.     Plaintiff Pled Facts Sufficient To State A Claim Of FEHA Race Discrimination.**

The FEHA prohibits discrimination based on an individual's race. Employers may not discriminate in compensation, terms, conditions or privileges of employment. Gov. Code section 12940(a).  Such discrimination is often called an "adverse employment action". To be actionable under section 12940, the adverse treatment must be reasonably likely to impair a reasonable employee's job performance or prospects for advancement. *Horsford v. Board of Trustee of Calif State Univ*, supra 132 Cal4th  at 373; *Yanowizt v. L'Oreal USA*, Inc. (2005) 36 Cal.4th 1028, 1049.

To establish a prima facie case of employment discrimination through disparate impact, plaintiff need only demonstrate that a particular practice operates to exclude members of his or her protected group. *Ibarbia v. Regents of Univ. of Calif.*, 191 Cal.App.3d 1318, 1327 (1987).  Plaintiff pled facts to show that the he was told he was not liked by the African American employees, that he was referred to as the "blue-eyed white devil" by Defendants, that he was called the "quintessential white boy" by Defendants, that racial jokes about Plaintiff were made by Defendants; and that Plaintiff was also referred to as a "f*cking cracker" and "white boy" by the named Defendants [FAC, 28]. When another employee complained of these comments, Defendant Trump responded with "[Plaintiff]

1  deserves it" and did nothing to rectify the situation. Plaintiff also pled that after he
2  complained of racial discrimination, he was placed on "administrative duty" where
3  he was forced to do demeaning tasks – and report to Defendants Agard and
4  Jones—the same employees who made those racially charged comments [FAC, 30-
5  32].

6      Plaintiff suffered adverse employment actions because such comments
7  changed the terms and conditions of his employment, and he was placed on
8  administrative duty. In short, Plaintiff has pled facts sufficient under Rule 8 to state
9  a claim for FEHA discrimination, whether under the disparate treatment or
10  disparate impact theory.

11    **C.   Plaintiff Pled Facts Sufficient To State A Claim Of FEHA**
12        **Retaliation.**

13     Defendants argue that Plaintiff failed to state a claim of FEHA retaliation
14  because he failed to plead facts sufficient to support a claim for relief. In an odd
15  attempt to confuse the Court, Defendants claim that Plaintiff does not have a cause
16  of action for retaliation because "engaging in POA activity is not protected by the
17  FEHA". Defendants must have overlooked Plaintiff's complaint whereby he states
18  that after he reported and complained of race discrimination, he was retaliated
19  against. This is the impetus of Plaintiff's FEHA retaliation claim.
20

21     A retaliation claim under the California Fair Employment and Housing Act
22  (FEHA) may be brought by an employee who has complained of or opposed
23  conduct that the employee reasonably believes to be discriminatory, even when a
24  court later determines the conduct was not actually prohibited by the FEHA.
25  *Yanowitz v. L'Oreal USA* (2005) 36 Cal.App.4th 1028; Cal Government Code
26  section 12940(h). Under the retaliation provision of the FEHA, it is not improper
27  for the Court to consider collectively several alleged retaliatory acts, with a view
28

1
2
3
4

toward determining whether adverse employment action has occurred under totality of the circumstances, without necessarily determining whether each act separately constituted adverse employment action. Cal. Gov. Code section 12940(h).

5
6
7
8
9

In order to establish a prima facie case of retaliation, Plaintiff must prove that he engaged in 1) a protected activity under the FEHA; 2) the employer subjected him to an adverse employment action; and 3) there is a causal link between his protected activity and the employer's action. *Piner v. Specialty Restaurant Corp* (2005) 130 Cal.App.4th 635,639.

10
11
12
13
14
15
16
17
18
19

Plaintiff alleged that just one month after he complained of race discrimination, he was placed on the embarrassing and demeaning "administrative duty" [FAC 31-32]. Moreover, Plaintiff alleged in his complaint that when he complained to Defendant Vasquez, he stated to Plaintiff "You may be knocking on a door that you may not want to be knocking on, and that could be bad for your career" [FAC, 30]. When Plaintiff complained, he was engaged in protected activity under FEHA- opposing discrimination, and when he was placed on administrative duty, Defendants subjected Plaintiff to an adverse employment action.

20
21
22
23
24
25

There exists a causal link between Plaintiff's complaint of race discrimination and the adverse action because Plaintiff was forced on "administrative duty" close in time after Plaintiff complained. At any rate, causation is a disputed issue of fact that should not be decided at this stage in the proceedings. Plaintiffs should at least have the opportunity to conduct discovery as to this issue.

26

///

27

///

28

**D.**   **Plaintiff Pled Facts Sufficient To State A Claim Of FEHA Harassment.**

Cal. Government Code §12940(j)(1) prohibits "harassment" based upon "race" . While a plaintiff who alleges "discrimination" in violation of subdivision §12940(a) must prove that he or she was discriminated against "*in compensation or in terms, conditions or privileges of employment*," a plaintiff who alleges "harassment" in violation of subdivision §12940(j) need not prove loss of tangible job benefits. *Mogilefsky v. Sup.Ct. (Silver Pictures)* (1993) 20 Cal.App.4th 1409, 1414.

"[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough <u>or</u> sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [race] . . . The working environment must be evaluated in light of the totality of the circumstances: '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"   *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 588, citing *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.

FEHC defines harassment as: *verbal harassment*, such as epithets, derogatory comments or slurs (or repeated romantic overtures, sexual comments and jokes or prying into one's personal affairs); *physical harassment*, such as unwanted touching, rubbing against someone, assault and physical interference with movement or work; or *visual harassment*, such as derogatory cartoons,

drawings or posters, lewd gestures or leering. 2 Cal.C.Regs. §7287.6(b)(1).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Miller,* 36 Cal.4th at 462. Here, the conduct was outrageous and involved verbal harassment. Plaintiff was subjected to verbal harassment that would most certainly qualify as extreme. Plaintiff alleges that he was subjected to being called the following names by Defendants:

- "blue-eyed white devil" [FAC, 28];

- "quintessential white boy and I hate him" [FAC, 28];

- Racial jokes and comments [FAC, 28];

- Plaintiff was told that he could not go inside the police station (where he worked) because the African-American employees did not like him [FAC, 28];

- "f*cking cracker" [FAC, 28];

- "white boy" [FAC, 28].

"The FEHA imposes two standards of employer liability for harassment, depending on whether the person engaging in the harassment is the victim's supervisor or a nonsupervisory coemployee. The employer is liable for harassment by a nonsupervisory employee only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action." State Dept. of Health Services v. Superior Court (2003) 31 Cal.4th 1026, 1040-1041. "[B]y implication the FEHA makes the employer strictly liable for harassment by a supervisor." Id.

On top of the comments made to Plaintiff, he was also retaliated against for complaining of race discrimination. Moreover, Plaintiff's employers were made aware and did nothing, but instead told the complaining party (another employee) that "Plaintiff deserved it". Plaintiff has pled facts sufficient under Rule 8 to state a claim for FEHA harassment.

**E.     Plaintiff Pled Facts Sufficient To State A Claim Of FEHA Failure to Take Corrective Action.**

Under FEHA, it is unlawful for employers to "fail to take **all** reasonable steps to prevent discrimination and harassment from occurring." *State Dept. of Health Services v. Superior Court (McGinnis)* (2003) 31 Cal.4th 1026, 1040. "One such reasonable step, and one that is required in order to ensure a discrimination-free work environment, is a prompt investigation of the discrimination claim." *California Fair Employment and Housing Com'n v. Gemini* (2004) 122 Cal.App.4th 1004, 1025. Here, the Defendants have no serious defense, and their motion shows.

Rather than provide the Court with any serious argument, the Defendants simply conclude that "since Plaintiff cannot establish that he was discriminated, harassed, or retaliated against, he cannot maintain a claim under this section" [MTD, page 12]. However, Plaintiff specifically pled in his complaint that him, and another employee, both complained of race discrimination against Plaintiff---but Defendants did nothing to correct it. The City clearly failed to prevent further discrimination of Plaintiff.

**F.     Plaintiff Has Sufficiently Stated a Claim of Retaliation Under the First Amendment.**

**1.     Plaintiff's Speech Addressed a Matter of Public Concern.**

OPPOSITION TO MOTION TO DISMISS- 13

1
2
3
4
5
6
7
8
9
10

Defendants argue that Plaintiff's speech did not address a matter of public concern. However, "'communication[s] on matters relating to the functioning of government' . . . are matters of inherent public concern." *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 425 (9th Cir.1995) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). "[T]he competency of the police force is surely a matter of great public concern. [Also,] the interrelationship between city management and its employees is closely connected with 'discipline and morale in the workplace'—factors that 'are related to an agency's efficient performance of its duties.'" *McKinley*, 705 F.2d at 1114 (quoting *Connick v. Myers*, 461 U.S. 138, 148 (1983)).

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Here, Plaintiff pled facts to show that he participated in his union and that his speech was fairly related to political, social and community concerns. In fact, Plaintiff alleged that he pioneered the union endeavor and was elected to parliamentarian for the POA [FAC, 17]; that when Plaintiff decided to exercise his lawful rights under POBR, that Defendant Trump retaliated against him for it [FAC, 19]; Plaintiff reported Defendant Trumps retaliation and thereafter he was subjected to more retaliation [FAC 20-24]; and most importantly, Plaintiff was placed on administrative leave for no reason and subject to a "gag order"- where he could not contact any member for the Santa Monica College Police Department or any college employees [FAC, 25]; the gag order hindered Plaintiff from participating as Parliamentarian of the POA and from communicating with his fellow board members, members of the POA, and even his friends at the Department or college [FAC, 26].

25
26
27
28

As such, Plaintiff's speech was on matters relating to the functioning of government, specifically the competency of the Police Department. Plaintiff's speech also dealt with a breakdown in the interrelationship between city management and its employees. Therefore, Plaintiff's speech was on matters of

public concern. Moreover, Defendants instituted a gag order against Plaintiff that would chill any ordinary citizen from speaking- he was not allowed to speak to anyone or perform his tasks for the POA. Defendants were motivated by Plaintiff's speech- his union activity and for complaining about Defendant Trumps retaliation of Plaintiff for exercising his rights.

The cases cited by Defendants either fail to address the issue, or involve speech on matters of concern only to the individual plaintiffs. Perhaps more important, is the fact that those cases do not deal with dismissals of claims under Rule 12(b)(6) but are instead decisions rendered after the parties were permitted to conduct evidentiary discovery. Here, Defendants appear to adopt a Motion for Summary Judgment standard, hoping to avoid the liberal pleading standard set forth under Rule 8. Accordingly, Plaintiff's speech is protected under the First Amendment.

## 2.   Plaintiff has alleged facts to impose *Monell* liability

Municipalities are liable under Section 1983 when "action pursuant to official policy of some nature cause[s] a constitutional tort." *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). An action or policy can be "official" if "made by [the municipality's] law makers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

In *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983), the Court reviewed a case wherein a probationary police officer brought suit against the city for violating his First Amendment rights after being discharged for publicly criticizing the city's decision not to grant an annual pay raise to police officers. One of the arguments raised by the defendant city was that it was not liable under

1   Section 1983 because the officer's termination "was the isolated act of an
2   individual city employee rather than the result of an official municipal policy." *Id.*
3   at 1116. The Court disagreed, holding that "[w]here a city official alone is the
4   final authority or ultimate repository of power, 'his official conduct and decisions
5   must necessarily be considered those of one 'whose edicts or acts may fairly be
6   said to represent official policy' for which the municipality may be held
7   responsible under section 1983.'" *Id.* (citations omitted).

8       Here, Plaintiff has pled facts to show the City delegated policy-making
9   authority to the Chief and to Defendant Trump. Plaintiff further pled facts to show
10  that Chief Vasquez made the decision to place the gag order on Plaintiff [FAC,
11  26]. As such, the decision to demote Plaintiff represents the official policy of the
12  City. If the Court is inclined to grant Defendants' Motion as to this issue, Plaintiff
13  should be granted leave to amend or to conduct limited discovery.

## CONCLUSION

       For all of the reasons discussed above, Plaintiff requests that the Court deny
Defendants' Motion to Dismiss in toto. However, if the Court is inclined to grant
any part of Defendants' motion, Plaintiff requests an opportunity to amend the
FAC.

Dated: July 11, 2011                    **LACKIE, DAMMEIER & MCGILL APC**


                                        BY: _____
                                             Michael A. McGill
                                             Carolina Veronica Diaz
                                             Attorneys for PLAINTIFF
                                             RUSSEL RUETZ