1  LOUIS R. DUMONT – State Bar No. 130198
   JILL W. BABINGTON – State Bar No. 221793
2  CARPENTER, ROTHANS & DUMONT
   888 S. Figueroa Street, Suite 1960
3  Los Angeles, CA  90017
   (213) 228-0400 / (213) 228-0401 [Fax]
4  ldumont@crdlaw.com / jbabington@crdlaw.com

5  Attorneys for Defendants, SANTA MONICA COMMUNITY COLLEGE
       DISTRICT, a public entity, [*also erroneously sued herein as "Santa Monica*
6      *College Police Department"*], CHIEF ALBERT VASQUEZ, SHERYL
       AGARD, JENNIFER JONES, and TARA CRITTENDEN, public
7  employees

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  Claim of RUSSEL RUETZ,                    )  Case No.: CV11-03921 JAK (Ex)
                                              )
12              Plaintiff,                    )  **REPLY TO PLAINTIFF'S**
                                              )  **OPPOSITION TO MOTION TO**
13       vs.                                  )  **DISMISS FIRST AMENDED**
                                              )  **COMPLAINT**
14  SANTA MONICA COMMUNITY                    )
    COLLEGE DISTRICT, a municipal             )  **[Fed. R. Civ. P., 12(b)(6); 12(e)]**
15  corporation; SANTA MONICA                 )
    COLLEGE POLICE DEPARTMENT,                )  Date:  August 1, 2011
16  an operating department thereof;          )  Time:  1:30 p.m.
    ALBERT VASQUEZ, individually and          )  Courtroom:  750
17  as Police Chief; KURT TRUMP,              )
    individually and as Acting                )  Discovery Cut-Off:  Not set
18  Chief/Sergeant; SHERYL AGARD,             )  Final Pre-Trial Conf.:  Not set
    individually and as Secretary to the      )  Trial:  Not set
19  Chief of Police; JENNIFER JONES,          )
    individually and as Secretary; TARA       )
20  CRITTENDEN, individually and as           )
    Dispatcher,                               )
21                                            )
                Defendants.                   )
22                                            )
                                              )
23  _____)

24

25       COMES NOW Defendants SANTA MONICA COMMUNITY COLLEGE

26  DISTRICT ("SMCCD"), a public entity, CHIEF ALBERT VASQUEZ, SHERYL

27  / / /

28  / / /

                                  - 1 -
        REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
                      FIRST AMENDED COMPLAINT

1  AGARD, JENNIFER JONES, and TARA CRITTENDEN, public employees, and

2  hereby submit this reply to plaintiff's opposition to the motion to dismiss.

3

4  DATED: July 14, 2011                    CARPENTER, ROTHANS & DUMONT

5

                                    By:    _____
6                                          LOUIS R. DUMONT
7                                          JILL W. BABINGTON
                                           Attorneys for Defendants,
8                                          SANTA MONICA COMMUNITY
9                                          COLLEGE DISTRICT, a public entity,
                                           ALBERT VASQUEZ, SHERYL AGARD,
10                                         JENNIFER JONES, and TARA
11                                         CRITTENDEN, public employees
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.    INTRODUCTION**

3            In the First Amended Complaint, the plaintiff has simply copied and pasted

4     the exact set of facts that were alleged in the original Complaint and have added

5     nothing of substance to rectify the deficiencies that existed in the original

6     Complaint.   However, as with the original Complaint, once the First Amended

7     Complaint is stripped of the allegations concerning union activity that is not

8     protected under the FEHA, it is clear that there is little but legal conclusions pled.

9            The plaintiff attempts to assert a First Amendment claim that is premised on

10    involving a matter of public concern simply because it is related to a police

11    department.  Yet, the allegations fall squarely in line with recent Ninth Circuit

12    authority that unequivocally declines to offer this type of internal departmental

13    dispute First Amendment protection.  Faced with these hurdles, the plaintiff cites

14    to and invites the Court to accept an outdated standard of review for 12(b)

15    motions which ignores the recent impact of the Supreme Court decision in Iqbal,

16    an invitation this Court should decline.

17    **II.    STATEMENT OF LAW**

18            **A.    The Plaintiff Misstates The Current Standard of Review And**

19                    **Cites To Pre-Iqbal and Pre-Twombley Decisions That Are No**

20                    **Longer Correct Statements of the Present Pleading Standard.**

21            Plaintiff goes to great length to cite cases that no longer have any

22    applicability in an effort to obtain a more favorable standard of review.

23    [Document 13 – 7:2-28.]  However, these cases predate the 2007 Twombly

24    decision or the 2009 Iqbal decision, which have shaped the current pleading

25    standard under Rule 12.  While commentators have voiced criticism of the new

26    heightened and demanding standard, it does not change that it is the current state

27    of the law.  As noted in the motion, Iqbal ushered in a new two-step approach,

28    where to overcome a motion to dismiss, a claim must allege "sufficient factual

- 1 -

1   matter, accepted as true, to 'state a claim plausible on its face.'" <u>Ashcroft v.</u>

2   <u>Iqbal</u>, -- U.S. --, 129 S.Ct. 1937, 1949 (2009).  This requires that the Court:

3   > "[I]dentify pleadings that, because they are no more than conclusions,

4   > are not entitled to the assumption of truth. While legal conclusions

5   > can provide the framework of a complaint, they must be supported by

6   > factual allegations. When there are well-pleaded factual allegations, a

7   > court should assume their veracity and then [engage in the second step

8   > to] determine whether they plausibly give rise to an entitlement to

9   > relief."

10  <u>Iqbal</u>, 129 S.Ct. at 1950.

11  Consistent with this are the standards that "[w]here a complaint pleads facts

12  that are "merely consistent with" a defendant's liability, it "stops short of the line

13  between possibility and plausibility of 'entitlement to relief."  <u>Id.</u> at 1949

14  (internal citations removed).  A pleading that offers "labels and conclusions" or "a

15  formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> (*citing*

16  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Similarly,

17  "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18  conclusory statements, do not suffice."  <u>Bell Atlantic Corp.</u>, 550 U.S. at 555

19  This is a far cry from the standard posited by the plaintiff – and on which

20  his entire opposition to the motion to dismiss is premised.  In fact, the plaintiff

21  entirely fails to address facial plausibility, a central element under <u>Iqbal</u>.  It is also

22  worth noting that while plaintiff suggests civil rights cases are subject to a

23  different standard, <u>Iqbal</u> was, in fact, a civil rights case brought by a pre-trial

24  detainee at Guantanamo Bay against the United States Attorney General.  Thus,

25  the heightened standard is entirely applicable here, and when considering that

26  plaintiff has failed to address the required elements, it is respectfully submitted

27  that the motion should be granted.

28

- 2 -

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1
2

**B.    Plaintiff Has Failed To Articulate A Facially Plausible First Amendment Claim.**

3    Without ever confronting the dispositive cases cited by the defendants in

4    their motion, the plaintiff attempts to put together a mélange of cases to articulate

5    how his involvement in a union embodies a matter of public concern.  The first

6    case cited to is Johnson v. Multnomah County, 48 F.3d 420 (9th Cir. 1983).

7    There, the Ninth Circuit restated the Supreme Court's holding in Connick v.

8    Myers, 461 U.S. 138, 146 (1983) - a case cited to by the defendants in their

9    motion to dismiss – that "[s]peech involves a matter of public concern when it can

10   fairly be considered to relate to 'any matter of political, social, or other concern to

11   the community.'"  Johnson, 48 F.3d at 423-24.  Or, as put by the Supreme Court,

12   the essential question is whether the speech addressed matters of "public" as

13   opposed to "personal" interest.  Connick, 461 U.S. 138, 147 (1983).

14   Specifically in Johnson, the statements at issue involved references plaintiff

15   made about her supervisor "awarding county contracts as paybacks for favors

16   made by the 'good old boy network.'"  Id. at 422.  Government corruption is a far

17   cry from what the plaintiff has alleged here, namely that he was a member of a

18   police officer's union and was hindered from communicating with fellow union

19   members as a result of being placed on administrative leave.  [FAC, ¶¶ 24-25.]

20   While corruption certainly goes to a societal or community concern, the activities

21   of a police officer's union are inherently intrinsic.  What is pointed to by the

22   plaintiff as being a matter of public concern – his status as police officer's union

23   parliamentarian – simply does not rise to the level of a community concern as a

24   matter of law.  Notably, further divesting this claim of facial plausibility is that

25   plaintiff never identified the basis for his administrative leave, despite mentioning

26   that a search warrant signed by a magistrate was served by members of the Santa

27   Monica Police Department.  [FAC, ¶ 27.]

28

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1        The second case cited by plaintiff, <u>McKinley v. City of Eloy</u>, 705 F.2d 1110
2   (9th Cir. 1983) is similarly unsupportive.  In that case, a police officer went to a
3   city council meeting to complaint about not receiving an annual pay raise.  The
4   mayor "told plaintiff to 'shut up and sit down' and adjourned the meeting. Later
5   that evening plaintiff was permitted to speak at a second session, but the council
6   refused to respond to the issues he raised. The next day plaintiff was interviewed
7   by a Phoenix television station regarding the dispute . . . ." <u>Id.</u> at 1112.  At a
8   meeting the next day, the mayor indicated his desire to fire the officer, and
9   "suggested that a citizen's complaint alleging excessive force . . . be used as a
10  basis to fire plaintiff." <u>Id</u> at 1113.  Plaintiff was ultimately fired. <u>Id.</u>

11       The Ninth Circuit began its analysis by stating that "to address a matter of
12  public concern, the content of the sergeant's speech must involve 'issues about
13  which information is needed or appropriate to enable the members of society to
14  make informed decisions about the operation of their government." <u>Id.</u> at 1114.
15  Speech that deals with "individual personnel disputes and grievances" and that
16  would be of "no relevance to the public's evaluation of the performance of
17  governmental agencies" is generally not of "public concern." <u>Id.</u>  The same is
18  true of "speech that relates to internal power struggles within the workplace," and
19  speech which is of no interest "beyond the employee's bureaucratic niche."
20  <u>Tucker v. Cal. Dep't of Educ.</u>, 97 F.3d 1204, 1210 (9th Cir.1996).  The Court
21  concluded that because plaintiff "purposefully directed to the public both through
22  city council meetings and a television interview" as it related to "the ability of the
23  city to attract and retain qualified police personnel, and the competency of the
24  police force is surely a matter of great public concern." <u>Id.</u> at 1114-15.

25       The situation in <u>McKinley</u> is not present in this case.  Plaintiff never
26  communicated with elected officials, let alone to a city at a city council meeting or
27  in a television interview.  Moreover, plaintiff never communicated concerns about
28  the ability to attract and retain qualified police personnel.  In this context, the

-4-

1  fundamental distinction between a city and a California community college
2  district is clear – college districts do not maintain typical police departments like
3  municipalities do, making <u>McKinley</u> entirely inapposite.  Instead, at most what
4  plaintiff has alleged our personal disputes between him and his superiors.  These
5  internal power struggles within the police department are of no consequence to the
6  general public and, therefore, statements made in that context are not entitled to
7  First Amendment protection.

8       A case more closely on point relative to the personal dispute issue is the
9  recent Ninth Circuit decision in <u>Desrochers v. City of San Bernardino</u>, 572 F.3d
10  703 (9th Cir. 2009).  The plaintiffs, two San Bernardino County Police
11  Department sergeants, "along with two other SBPD sergeants (Steve Filson and
12  William Hanley), filed an informal grievance against their supervisor, Lieutenant
13  Mitchal Kimball, who headed the Specialized Enforcement Bureau ("SEB"). . . .
14  According to Captain Frank Mankin, who adjudicated the grievance, the
15  complainants alleged that "there was an ongoing and continuing issue relative to a
16  difference of personalities between the four sergeants" and Lieutenant Kimball.
17  Mankin continued: "It was the impression of the four sergeants that the interaction
18  between themselves and Lieutenant Kimball had risen to a level so as to impact
19  the operational efficiency and effectiveness of the units over which Lieutenant
20  Kimball had managerial oversight." The sergeants requested that the department
21  1) remove Kimball from command of the SEB; 2) formally investigate the charges
22  contained in their grievance; 3) place Kimball on a "[w]ork performance
23  contract"; 4) order Kimball to attend "[i]nterpersonal relations training"; and 5)
24  monitor Kimball's conduct in the future." <u>Id</u>. at 705-06.

25       The sergeants were not satisfied, and thus filed a formal grievance, alleging
26  a "hostile work environment by his repeated violations" of various internal SBPD
27  policies. The grievance also accused Billdt and Mankin of perpetuating this
28

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  environment by "fail[ing] to take appropriate action." Id. at 706.  The plaintiffs

2  each provided declarations supporting their grievance.

3       Plaintiff Desrochers stated that "Lt. Kimball is a very autocratic, controlling

4  and critical supervisor. Everyone that works for him has felt the stress that he

5  brings to every situation [ . . .] He controls and manipulates every conversation

6  until it concludes to his satisfaction. He absolutely discourages any dissention

7  [sic] from his opinion and gives the definite sense that anyone that disagrees with

8  his approach is incompetent . . . .  He operates in the belief that everyone around

9  him is incompetent and that, without his influence, the police department would

10 quickly fail." The other plaintiff, Sergeant Lowes, "asserted that Kimball's

11 'approach and tactics were destroying the moral [sic] and confidence of his

12 men.'" Id. at 706. This included "Kimball "chew[ing] out" Lowes in front of

13 members of the Rialto Police Department, implying that the other department was

14 incompeten[t]." Id.  Ultimately, the two officers opined that Lieutenant Kimball's

15 actions were having a negative effect on the unit's confidence and functionality.

16 The grievance was ultimately denied. Id. at 707.

17       Against this background, the Ninth Circuit flatly rejected a First

18 Amendment claim by these two police officers, stating:

19       "Desrochers and Lowes attempt to characterize their grievances as

20       necessarily implicating issues such as the "competency,"

21       "preparedness," "efficiency," and "morale" of the SBPD. We are not

22       persuaded. **We have never held that a simple reference to**

23       **government functioning automatically qualifies as speech on a**

24       **matter of public concern**. To the contrary, as we have recently

25       indicated, **the fact that speech contains "passing references to**

26       **public safety[,] incidental to the message conveyed" weighs**

27       **against a finding of public concern . . . . The reality that poor**

28       **interpersonal relationships amongst coworkers might hamper the**

- 6 -

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1          **work of a government office does not automatically transform**

2          **speech on such issues into speech on a matter of public concern.**"

3          Id. at 710-11 (emphasis added).

4    The Ninth Circuit went on to state that "[t]he speech in question is largely devoid

5    of reference to matters we have deemed to be of public concern. There are no

6    allegations of conduct amounting to 'actual or potential wrongdoing or breach of

7    public trust.' One can read the grievances and conclude that Kimball was arrogant,

8    Boom was irreverent, and Mankin and Billdt disagreed with the sergeants'

9    assessment of their lieutenants, but that does not mean they were incompetent, and

10   it certainly does not mean that they were malfeasant." Id.

11         The conduct in Desrochers goes far beyond the plaintiff's skeletal

12   allegations here.  Ruetz does not suggest that he was intimidated by superiors or

13   that their perceived irreverence impacted his speech.  He simply contends that he

14   could not communicate with colleagues while on administrative leave after a

15   separate and distinct law enforcement agency returned search warrants against

16   him, which had the negligible, and perhaps merely incidental, impact of hindering

17   his union efforts.  [FAC 25-27].  This falls squarely in line with the most current

18   of Ninth Circuit jurisprudence in Desrochers, in that passing references to public

19   safety, which largely are absent here, that are incidental to the message conveyed,

20   weighs firmly against a finding of public concern.  Instead, what is clear from

21   both plaintiff's original and amended complaint is that the alleged statements were

22   little more than personal disputes.  As such, there is no element of public concern

23   and this cause of action should be dismissed.

24         C.     **The Plaintiff Has Failed to Articulate A Facially Plausible Monell**

25                **Claim Against the Community College District.**

26         It should be noted from the outset that if the plaintiff's First Amendment

27   claim is dismissed, the Monell claim must necessarily fail. See Monell v.

28   Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).

- 7 -

1   Second, plaintiff's reliance on <u>McKinley</u> to support his proposition that an
2   act by a single officer can constitute an official policy is misplaced in the context
3   of a community college district.  There, the officer who engaged in the
4   misconduct was the city manager, the person vested with authority to make final
5   policy decisions on behalf of the municipality.  <u>McKinley</u>, 705 F.2d at 1116-17
6   ("[P]ersonnel decisions of the city manager represented 'official city policy.'  In
7   light of this testimony and the overall structure of Eloy's government, it is
8   undeniable that City Manager Fuller was an official whose edicts or acts may
9   fairly be said to represent official policy.")  But the plaintiff cannot contend that a
10  community college district, whose very operation is governed by Division 7 of the
11  California Education Code (<u>Education Code</u> § 70900 *et seq.*), is similar to an
12  independent municipality.  For starters, community college districts must act
13  through their board of trustees.  <u>Education Code</u> § 70902.  <u>See</u> EDUC. CODE §
14  70902(a)(1) ("Every community college district shall be under the control of a
15  board of trustees, which is referred to herein as the 'governing board.'").  There is
16  no city manager.  Moreover, the permissible establishment of a community
17  college district police department is firmly subjected to the authority and control
18  of the board.  <u>See</u> CAL. EDUC. CODE §§ 72330-72332.  As such, this case is firmly
19  distinguishable from that of <u>McKinley</u> and the plaintiff's bare assertion of
20  authority is not sufficient to meet the facially plausible showing required under
21  <u>Iqbal</u> and <u>Twombly</u>.

22  **D.    Plaintiff's FEHA Claims Are Not Plausible Where They Rely on**
23  **Vague Legal Conclusions and Are Premised on Unprotected**
24  **Activities.**

25  As noted in the motion, union advocacy is not a protected activity under the
26  FEHA.  CAL. GOVT. CODE § 12940(a); CAL. CODE REGS., tit. 2, § 7287.8(a).  As
27  such, the numerous allegations in the First Amended Complaint that speak solely
28  to that conduct is irrelevant for purposes of the FEHA claims.  When stripped of

- 8 -

1   these non-actionable allegations, it is clear that plaintiff's complaint is nothing but

2   legal conclusions.  For example, in his opposition, he states that he was placed on

3   embarrassing and demeaning "administrative leave."  [Document 13, 10:10-13].

4   However, plaintiff never describes what made the administrative leave

5   embarrassing or demeaning.   Nor does it show how the employer's action

6   substantially and materially adversely affected the terms and conditions of the

7   plaintiff's employment.  See Akers v. County of San Diego, 95 Cal.App.4th 1441

8   (2002).  As such, the vague and conclusory allegations of "lack of promotion,

9   counseling, involuntary administrative penalty, denial of benefits, ostracism,

10  negative evaluations, negative comment sheets, reassignments, retaliation, and

11  other acts and conduct" are insufficient to satisfy the plaintiff's pleading

12  requirement under Iqbal.

13       With respect to the harassment cause of action, plaintiff identifies several

14  statements that he believes amounted to harassment, yet fails to give an indication

15  of the frequency, intensity, or timeliness with which the alleged acts occurred

16  (e.g., "Did each alleged act occur once in four years" or "on a daily or weekly

17  basis?"; What alleged incidents occurred "within the FEHA's one-year statute of

18  limitations (§ 12960)?") –questions to which California courts require answer

19  before a pleading can be considered sufficient.  Fisher v. San Pedro Peninsula

20  Hosp., 214 Cal.App.3d 590, 613 (1989).  Indeed, without such facts, plaintiff has

21  not presented evidence of a facially plausible claim, as they can readily be

22  considered isolated events.

23       As to the discrimination claim, plaintiff purports to be making a disparate

24  impact claim.  [Document 13, 8:18-20.]  However, again, there are no factual

25  allegations to support this.  The gist of a disparate impact claim is that "a facially

26  neutral employer practice or policy, bearing no manifest relationship to job

27  requirements, . . . had a disproportionate adverse effect on members of [a]

28  protected class."  Guz v. Bechtel National, Inc. 24 Cal.4th 317, 354, fn. 20 (2000).

- 9 -

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  Yet, plaintiff has not – and cannot – point to any employer practice or policy that

2  manifests itself in the off-handed comments of two secretaries.  Nor does plaintiff

3  allege that such a policy exists.  Consequently, the First Amended Complaint

4  cannot be amended in any way so as to make this claim viable under Iqbal.

5  **III.    CONCLUSION**

6         Based upon the foregoing, the defendants respectfully request that this Court

7  grant the instant Motion to Dismiss with prejudice without affording the plaintiff

8  the opportunity to amend.

10  DATED:  July 14, 2011                    CARPENTER, ROTHANS & DUMONT

13                              By:  _____

14                                   LOUIS R. DUMONT
                                     JILL W. BABINGTON
15                                   Attorneys for Defendants
                                     SANTA MONICA COMMUNITY
16                                   COLLEGE DISTRICT, a public entity,
                                     ALBERT VASQUEZ, SHERYL AGARD,
17                                   JENNIFER JONES, and TARA
                                     CRITTENDEN, public employees

- 10 -

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT