1   **LOUIS R. DUMONT – State Bar No. 130198**
    **JILL W. BABINGTON – State Bar No. 221793**
2   **STEVEN WYSOCKY – State Bar No. 271257**
    **CARPENTER, ROTHANS & DUMONT**
3   **888 S. Figueroa Street, Suite 1960**
    **Los Angeles, CA 90017**
4   **(213) 228-0400 / (213) 228-0401 [Fax]**
    **ldumont@crdlaw.com / jbabington@crdlaw.com / swysocky@crdlaw.com**
5
    Attorneys for Defendants, SANTA MONICA COMMUNITY COLLEGE
6   DISTRICT, a public entity, [*also erroneously sued herein as "Santa Monica*
    *College Police Department"*], CHIEF ALBERT VASQUEZ, SHERYL
7   AGARD, JENNIFER JONES, and TARA CRITTENDEN, public
    employees
8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12   Claim of RUSSEL RUETZ, | ) Case No.: CV11-03921 JAK (Ex) |
|      Plaintiff, | ) **NOTICE OF MOTION AND** |
| 13   | ) **MOTION TO DISMISS SECOND** |
|      vs. | ) **AMENDED COMPLAINT, OR,** |
| 14   | ) **ALTERNATIVELY, MOTION FOR** |
|      SANTA MONICA COMMUNITY | ) **MORE DEFINITE STATEMENT;** |
| 15   COLLEGE DISTRICT, a municipal | ) **MEMORANDUM OF POINTS AND** |
|      corporation; SANTA MONICA | ) **AUTHORITIES IN SUPPORT** |
| 16   COLLEGE POLICE DEPARTMENT, | ) **THEREOF** |
|      an operating department thereof; | ) |
| 17   ALBERT VASQUEZ, individually and | ) **[Fed. R. Civ. P., 12(b)(6); 12(e)]** |
|      as Police Chief; KURT TRUMP, | ) |
| 18   individually and as Acting | ) |
|      Chief/Sergeant; SHERYL AGARD, | ) Date: September 26, 2011 |
| 19   individually and as Secretary to the | ) Time: 1:30 p.m. |
|      Chief of Police; JENNIFER JONES, | ) Courtroom: 750 |
| 20   individually and as Secretary; TARA | ) |
|      CRITTENDEN, individually and as | ) Discovery Cut-Off: March 30, 2012 |
| 21   Dispatcher, | ) Final Pre-Trial Conf.: June 4, 2012 |
|      | ) Trial: June 19, 2012 |
| 22   Defendants. | ) |
|      | ) |
| 23   | ) |
|      | ) |
| 24   | ) |

25           PLEASE TAKE NOTICE that on September 26, 2011 at 1:30 p.m., or as

26   soon thereafter as counsel may be heard in Courtroom 750 of the U.S. District

27   Court, Central District, Roybal Building, located at 255 E. Temple St., Los Angeles,

28   California, Defendant SANTA MONICA COMMUNITY COLLEGE DISTRICT

- 1 -
NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

1    ("SMCCD"), a public entity, CHIEF ALBERT VASQUEZ, SHERYL AGARD,

2    JENNIFER JONES, and TARA CRITTENDEN, public employees, hereby move

3    the Court to dismiss plaintiff's Second Amended Complaint for failure to state a

4    claim upon which relief can be granted, pursuant to Federal Rule of Civil

5    Procedure 12(b)(6), or in the alternative, for a more definite statement pursuant to

6    Federal Rule of Civil Procedure 8(a).  This motion is made and based on the

7    following grounds:

8         1.    Plaintiff's fifth claim for retaliation in violation of his First

9               Amendment rights under 42 U.S.C. § 1983 fails to state facts

10              sufficient to support a claim for relief.

11       This motion is made following meet and confer correspondence sent by the

12   moving party by both U.S. Mail and facsimile, pursuant to Local Rule 7-3, on

13   August 18, 2011.

14       This motion is made and based on this notice of motion, the memorandum

15   of points and authorities attached hereto, the pleadings and records on file with

16   this Court, and on such oral and documentary evidence as may be presented at the

17   hearing of this Motion.

18   DATED:  August 26, 2011              CARPENTER, ROTHANS & DUMONT

19

20                            By:    _Steven Wysocky_____

21                                   LOUIS R. DUMONT,
                                     JILL W. BABINGTON
22                                   STEVEN WYSOCKY
                                     Attorneys for Defendants,
23                                   SANTA MONICA COMMUNITY
24                                   COLLEGE DISTRICT, a public entity,
                                     ALBERT VASQUEZ, SHERYL AGARD,
25                                   JENNIFER JONES, and TARA
26                                   CRITTENDEN, public employees

27

28                                   - 2 -
─────────────────────────────────────────────────
NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

# TABLE OF CONTENTS

i.    TABLE OF CONTENTS ................................................................................. i

ii.   TABLE OF AUTHORITIES ......................................................................... ii

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 2

II.   STATEMENT OF LAW............................................................................... 3

    A.  This Motion to Dismiss is Proper, Where the Plaintiff Has Failed to State Facts Sufficient To Constitute A First Amendment Retaliation Claim Against the Defendants.................................................................... 3

    B.  Plaintiff's Fifth Claim for Violation of His First Amendment Rights Under 42 U.S.C. § 1983 Fails to State Facts Sufficient to Support A Claim for Relief..................................................................................... 4

        1.  Plaintiff Has Not Pled Facts Showing That He Engaged In A Matter of Public Concern ................................................................ 5

        2.  The First Amendment Claim Also Lacks Facial Plausibility Where the Plaintiff the Plaintiff Has Pled Facts Showing He Would Have Been Subject to Administrative Action Regardless of His Past History Because He Was The Subject of a Criminal Investigation by the Santa Monica Police Department Monell ........................ 15

        3.  Plaintiff Has Failed to Plead A Facially Plausible Case For Establishing Monell Liability........................................................ 17

    C.  Paragraph 27 of Plaintiff's Second Amended Complaint Cannot Serve As the Basis for a Constitutional Claim Under the Noerr-Pennington Doctrine ............................................................................................. 18

    D.  Alternatively, The Court Should Order That Plaintiff Provide A More Definite Staetment With Respect to the 1983 Cause of Action ............. 19

III.  CONCLUSION ......................................................................................... 20

TABLE OF CONTENTS

1

**TABLE OF AUTHORITIES**

2    CASES

3    Allen v. Scribner, 812 F.2d 426, 427–28, 431 (9th Cir. 1987) ........................15

4    Anderson v. Central Point School Dist. No. 6, 746 F.2d 505, 506–07

5       (9th Cir.1984) ...............................................................................15

6    Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937 (2009) .............................3, 4, 16

7    Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) ..............3

8    Barkoo v. Melby, 901 F.2d 613, 618–19 (7th Cir.1990) ...........................12

9    Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) .......................3-4

10   Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004) ...................................18

11   California Motor Transport Co. v. Trucking Unlimited,

12      404 U.S. 508, 510 (1972) ............................................................19

13   Connick v. Myers, 461 U.S. 138, 146 (1983) ...................................5-7, 14

14   Desrochers v. City of San Bernardino, 572 F.3d 703 (9th Cir. 2009) .........8-10, 15

15   Eastern R.R. Presidents' Conference v. Noerr Motor Freight, Inc., 365 U.S. 127

16   (1961)     19

17   Empress LLC v. City & County of San Francisco, 419 F.3d 1052

18      (9th Cir. 2005) ..........................................................................19

19   Finkelstein v. Bergna, 881 F.2d 702, 703, 706 (9th Cir.1989) ......................14

20   Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) ....................................14

21   Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992) ..........................18

22   Givhan v. Western Line Consolidated School Dist., 439 U.S. 410, 413 (1979) ...14

23   Havekost v. United States Dept. of Navy, 925 F.2d 316 (9th Cir. 1991) ........11-12

24   Hudson v. Craven, 403 F.3d 691, 698 (9th Cir. 2005) ................................4

25   Illinois v. Gates, 462 U.S. 213, 238 1983)............................................16

26   Kelley v. Johnson, 425 U.S. 238, 244-45 (1976)......................................15

27   Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) .....................3

28   Mariana v. Fisher, 338 F.3d 189, 199 (3d Cir. 2003) .................................19

TABLE OF AUTHORITIES

1    McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir. 1983) ...........................13

2    Mt. Healthy City School District Board of Ed. v. Doyle,

3       429 U.S. 274, 282, 284 (1977) ...................................................14

4    Monell v. Department of Social Services of City of New York,

5       436 U.S. 658, 694 (1978) ........................................................17

6    Perry v. Sindermann, 408 U.S. 593, 595 (1972) .......................................14

7    Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois, 391

8       U.S. 563 (1968) ..............................................................5, 14

9    Rankin v. McPherson, 483 U.S. 378, 380, 386 (1987) ...............................14

10    Roth v. Veteran's Admin. of the Gov't of the United States,

11       856 F.2d 1401, 1406 (9th Cir. 1988) .............................................14

12    Tucker v. Cal. Dep't of Educ., 97 F.3d 1204, 1210 (9th Cir.1996) .................13

13    Turner v. Reno, 976 F.2d 738 (9th Cir. 1992) .........................................8

14    Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) ...............................18

15    United Mine Workers of America v. Pennington. 381 U.S. 657 (1965) ............19

16    Van Compernolle v. City of Zeeland, 241 Fed. Appx. 244, 250 (6th Cir. 2007) ....8

17    Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 (9th Cir. 1997) ...........3

18

19    FEDERAL STATUTES

20    FED. R. CIV. P. 12(b)(6) ............................................................ 3

21    FED. R. CIV. P. 12(e) ...............................................................20

22

23    STATE STATUTES

24    CAL. EDUC. CODE § 70902(a)(1) ....................................................17

25    CAL. EDUC. CODE § 72330 ..........................................................17

26    CAL. EDUC. CODE § 72331...........................................................17

27    CAL. EDUC. CODE § 72332...........................................................17

28    CAL. GOVT. CODE § 3303(c) ........................................................16

1  CAL. PEN. CODE §1523......................................................................16

2  CAL. PEN. CODE §1524......................................................................16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **I.    INTRODUCTION**

3 |     In granting Defendants' Motion for More Definite Statement the First

4 | Amended Complaint, this Court granted Plaintiff Russell Ruetz a third

5 | opportunity to amend his complaint to plead a viable claim for violation of his

6 | First Amendment right to free speech and association pursuant to 42 U.S.C. §

7 | 1983.

8 |     A review of the Second Amended Complaint discloses that the only new

9 | factual allegations consist of one sentence contained in Paragraph 25, which

10 | relates to an administrative directive provided to Officer Ruetz, which states:

11 | "[t]he gag order was issued verbally and then memorialized in writing."

12 | [Compare Doc. 23 – SAC, ¶ 25, p.7:8-9 and Doc. 9, p.7:2-6.]  Beyond this

13 | allegation, plaintiff is now suggesting that the gravamen of the constitutional

14 | injury is the alleged administrative directive, or so called "gag order", was in

15 | "retaliation" for some unspecified union activity.  [See SAC ¶78.]   No other

16 | apparent changes have been made to plaintiff's First Amendment claim, which

17 | serves as the sole basis for the Court's jurisdiction in this action.

18 |     Defendants' contend that these minor changes utterly fail to establish how

19 | any of the purported activity alleged by the plaintiff involves a matter of public

20 | concern, which serves as the initial element that Officer Ruetz must establish in

21 | order to proceed with his federal claim.  The Second Amended Complaint fails to

22 | plead facially plausible allegations bringing plaintiff's conduct within that which

23 | the Supreme Court and Ninth Circuit have considered to be matters of public

24 | concern: corruption, breach of the public trust, political campaigning, public

25 | discourse at school board and city council meetings, and general waste that are the

26 | focus of the public concern element.

27 |     Similarly, plaintiff's allegations of policy making authority being vested in

28 | Chief Vasquez for purposes of his purported Monell claim is proscribed by the

- 1 -

1    California Education Code, which gives that power exclusively to the SMCCD

2    Board of Trustees.  Beyond that, plaintiff fails to identify or articulate any

3    widespread act, policy, or custom, leading to the alleged constitutional violation.

4           Therefore with plaintiff's sparse additions having no substantive impact on

5    the Iqbal analysis, and plaintiff seemingly being unable to provide any additional

6    facts to support this claim, the Court should grant the instant motion to dismiss,

7    necessitating the case being remanded back to the Los Angeles Superior Court.

8    **II.    STATEMENT OF FACTS**

9           The allegations of plaintiff's fifth cause of action suggest that defendants

10   Vasquez and Trump retaliated against him by telling plaintiff not to contact any

11   member of the SMCCD Police Department or employee while on administrative

12   leave without the permission of the SMCCD Chief of Police.  [Doc. 23 – SAC, ¶

13   25, p.7:5-10.]  In addition to this assertion, plaintiff references two other

14   paragraphs relative to his First Amendment claim.  Paragraph 26 alleges that

15   plaintiff was hindered [in some unspecified fashion], as Parliamentarian of the

16   Peace Officers Association, from communicating with fellow board members of

17   the POA and from participating in union activity.  Paragraph 27 of the SAC

18   further alleges that in June of 2010, the *Santa Monica Police Department*

19   procured a search warrant from a magistrate for a search of the plaintiff's home

20   that was allegedly initiated by SMCCD to further harass him.  [Emphasis added.]

21          When placed in context of the entire Second Amended Complaint though,

22   there are no facts to establish that plaintiff's conduct was a matter of public

23   concern.  Rather, the allegations reflect that plaintiff was engaged in nothing more

24   than an internal dispute with his superiors, which is a purely private concern.  [¶¶

25   19, 23-27.].

26   ///

27   ///

28   ///

- 2 -

III.    **STATEMENT OF LAW**

      A.    **This Motion To Dismiss Is Proper, Where The Plaintiff Has Failed To State Facts Sufficient To Constitute A First Amendment Retaliation Claim Against The Defendants.**

      Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss a claim, or claims, where a complaint fails to state facts sufficient to support a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Further, a motion to dismiss under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 (9th Cir. 1997). If a claim for relief cannot be cured by amendment, it should be dismissed without affording the plaintiffs leave to amend. Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

      The present Rule 12(b)(6) standard is a two-pronged approach that was announced in Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937 (2009). There, the U.S. Supreme Court held that to overcome a motion to dismiss, a claim must allege "sufficient factual matter, accepted as true, to 'state a claim plausible on its face.'" Id. at 1949. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief." Id. (internal citations removed).

      A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 1949 (*citing* Bell Atlantic

- 3 -

1 | Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Similarly, "[t]hreadbare recitals of

2 | the elements of a cause of action, supported by mere conclusory statements, do

3 | not suffice."  Bell Atlantic Corp. at 550 U.S. at 555 ("Although for the purposes

4 | of a motion to dismiss we must take all of the factual allegations in the complaint

5 | as true, we 'are not bound to accept as true a legal conclusion couched as a factual

6 | allegation' (internal quotation marks omitted.").

7 | "In keeping with these principles a court considering a motion to dismiss

8 | can choose to begin by identifying pleadings that, because they are no more than

9 | conclusions, are not entitled to the assumption of truth. While legal conclusions

10 | can provide the framework of a complaint, they must be supported by factual

11 | allegations. When there are well-pleaded factual allegations, a court should

12 | assume their veracity and then determine whether they plausibly give rise to an

13 | entitlement to relief."  Iqbal, 129 S.Ct. at 1950.

14 | Using these standards, plaintiff's Second Amended Complaint does not

15 | plead sufficient facts to constitute a claim for relief against the defendants.

16 | **B.**    **Plaintiff's Fifth Claim For Violation Of His First Amendment**

17 | **Rights Under 42 U.S.C. §1983 Fails To State Facts Sufficient To**

18 | **Support A Claim For Relief.**

19 | As noted above, plaintiff's 42 U.S.C. 1983 cause of action is principally

20 | based on an alleged "gag order" that was put in place after the plaintiff was placed

21 | on administrative leave and ordered not to talk to any employee at SMCCD.

22 | [SAC, ¶ 25.][1]  The plaintiff alleges that this gag order led to the incidental effect of

23 | adversely impacting plaintiff in his role as union parliamentarian.  [SAC, ¶ 26.]

24 |

25 | [1] Although plaintiff has also alleged an association claim, when a hybrid claim exists (First Amendment

26 | retaliation and association), the two are analyzed under the same standard.  Hudson v. Craven, 403 F.3d 691, 698 (9th Cir. 2005) ("Bearing in mind the Supreme Court's seminal public employee speech cases

27 | and their application in cases from the other circuits, we conclude that Pickering should be applied in this hybrid rights case. The speech and associational rights at issue here are so intertwined that we see no

28 | reason to distinguish this hybrid circumstance from a case involving only speech rights.").

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

1    Notably, plaintiff ***never*** identifies what the basis for his administrative leave was,

2    despite noting that a search warrant was issued by a neutral, detached magistrate [¶

3    27], which only serves to undercut the facial plausibility of his claim under Iqbal.

4    This claim is asserted against Defendants SMCCD (also erroneously sued as the

5    Santa Monica College Police Department), Kurt Trump and Chief Albert Vasquez.

6    The plaintiff has not pled sufficient facts to support this claim against either the

7    public entity defendant or the individual defendants.

8         First, to establish his claim for First Amendment retaliation against the

9    individual defendants, the plaintiff must plead facts to establish that (1) plaintiff

10   engaged in constitutionally protected speech; (2) adverse action was taken against

11   plaintiff that would likely chill an ordinary citizen from speaking; and (3) the

12   adverse action was motivated, in whole or in part, by the plaintiff's protected

13   speech.  A public employee's speech is constitutionally protected by the First

14   Amendment only when the speech involves a "matter of public concern."  Connick

15   v. Myers, 461 U.S. 138, 146 (1983); Pickering v. Board of Ed. of Tp. High School

16   Dist. 205, Will County, Illinois, 391 U.S. 563 (1968).  Plaintiff's Second Amended

17   Complaint fails to make a facially plausible assertion of facts capable of proving

18   any of these elements here.

19              **1.    Plaintiff Has Not Pled Facts Showing That He Engaged in**

20                   **A Matter of Public Concern.**

21        The Supreme Court of the United States has held that "when a public

22   employee speaks not as a citizen upon matters of public concern, but instead as an

23   employee upon matters only of personal interest, absent the most unusual

24   circumstances, a federal court is not the appropriate forum in which to review the

25   wisdom of a personnel decision taken by a public agency allegedly in reaction to

26   the employee's behavior."  Connick, 461 U.S. at 147; Cf. Bishop v. Wood, 426

27   U.S. 341, 349-50 (1976).

28   ///

- 5 -

1    Specifically at issue in <u>Connick</u> was the termination of Assistant District
2  Attorney Sheila Myers by District Attorney Harry Connick. 461 U.S. at 140. The
3  animosity between the employee and the department head began when Myers was
4  transferred to a different section. <u>Id</u>. Myers voiced her disagreement at the
5  decision internally. <u>Id</u>. at 140-41. Shortly thereafter, she "prepared a questionnaire
6  soliciting the views of her fellow staff members concerning office transfer policy,
7  office morale, the need for a grievance committee, the level of confidence in
8  supervisors, and whether employees felt pressured to work in political campaigns.
9  <u>Id</u>. at 141. After learning of this, District Attorney Connick "told Myers that she
10 was being terminated because of her refusal to accept the transfer. She was also
11 told that her distribution of the questionnaire was considered an act of
12 insubordination. Connick particularly objected to the question which inquired
13 whether employees "had confidence in and would rely on the word" of various
14 superiors in the office, and to a question concerning pressure to work in political
15 campaigns which he felt would be damaging if discovered by the press." <u>Id</u>.
16 Myers filed suit alleging a violation under 42 U.S.C. §1983 predicated on an
17 abridgment of her First Amendment rights.

18    After both the district court and the Court of Appeal found for Myers, the
19 Supreme Court reversed. In doing so, the Court held:

20    "Whether an employee's speech addresses a matter of public concern
21    must be determined by the content, form, and context of a given
22    statement, as revealed by the whole record. In this case, with but one
23    exception, the questions posed by Myers to her coworkers do not fall
24    under the rubric of matters of "public concern." We view the
25    questions pertaining to the confidence and trust that Myers' coworkers
26    possess in various supervisors, the level of office morale, and the need
27    for a grievance committee as mere extensions of Myers' dispute over
28    her transfer to another section of the criminal court. Unlike the

- 6 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

1    dissent, *post,* at 1698, we do not believe these questions are of public

2    import in evaluating the performance of the District Attorney as an

3    elected official.  Myers did not seek to inform the public that the

4    District Attorney's office was not discharging its governmental

5    responsibilities in the investigation and prosecution of criminal cases.

6    Nor did Myers seek to bring to light actual or potential wrongdoing or

7    breach of public trust on the part of Connick and others.  Indeed, the

8    questionnaire, if released to the public, would convey no information

9    at all other than the fact that a single employee is upset with the status

10   quo.  While discipline and morale in the workplace are related to an

11   agency's efficient performance of its duties, the focus of Myers'

12   questions is not to evaluate the performance of the office but rather to

13   gather ammunition for another round of controversy with her

14   superiors.  These questions reflect one employee's dissatisfaction with

15   a transfer and an attempt to turn that displeasure into a cause célèbre."

16   Id. at 147-48.  Furthermore, the Court determined that "a questionnaire not

17   otherwise of public concern does not attain that status because its subject

18   matter could, in different circumstances, have been the topic of a

19   communication to the public that might be of general interest." Id. at 147,

20   fn.8.  In making both of these determinations, the Supreme Court found that

21   the inquiry into the protected status of the speech is one of law. Id. at 147,

22   fn.7.

23        The facts presented in the plaintiff's Second Amended Complaint fail to

24   measure up to what was deemed a lack of public concern in Connick.  Notably,

25   Ruetz does not allege that he ever tried to inform the public about the "gag order"

26   or how it chilled his speech.  [See SAC, ¶¶ 25-27; Doc. 23, p.7:5-23.]  Ruetz does

27   not allege matters involving any breach of the public trust, corruption, or waste.

28   [Id.]  In fact, he does not even allege that this occurred on an office-wide level or

- 7 -

1   otherwise affected office morale.  [Id.]  At the most, the facts might possibly be

2   construed as suggesting a lack of confidence and trust in Ruetz's supervisors, or

3   even as pertaining to the peace officers association, a grievance process, but under

4   Connick, these are insufficient to make the speech a matter of public concern and

5   within the protection of the First Amendment.

6        With Connick serving as the jurisprudential backdrop, it is readily apparent

7   that the plaintiff cannot meet the matter of public concern element here, as "an

8   employee's speech, activity, or association, merely because it is union-related,

9   does not touch on a matter of public concern as a matter of law.  Thus, consistent

10  with the principle that an incidental reference to a public issue does not elevate a

11  statement to a matter of public concern . . . [plaintiff] must go beyond the fact that

12  his statements and activities on behalf of other officers occurred in a union context

13  and demonstrate that the focus of his speech and activities was fairly related to any

14  matter of political, social, or other concern to the community."  Van Compernolle

15  v. City of Zeeland, 241 Fed. Appx. 244, 250 (6th Cir. 2007) (internal citations

16  removed); Turner v. Reno, 976 F.2d 738 (9th Cir. 1992) (no First Amendment

17  violation where former fire chief was advised by City Manager not to discuss pre-

18  termination proceedings publically).  Therefore, Ruetz's union related speech and

19  the impact on his role as union parliamentarian [SAC, ¶¶ 23-26] cannot form the

20  basis of his First Amendment injury, as it does not constitute a matter of public

21  concern as a matter of law.

22       A case even more closely on point relative to the personal dispute issue is

23  the recent Ninth Circuit decision in Desrochers v. City of San Bernardino, 572

24  F.3d 703 (9th Cir. 2009).  There, the plaintiffs were two San Bernardino County

25  Police Department sergeants, "along with two other SBPD sergeants (Steve Filson

26  and William Hanley), filed an informal grievance against their supervisor,

27  Lieutenant Mitchal Kimball, who headed the Specialized Enforcement Bureau

28  ("SEB"). . . .  According to Captain Frank Mankin, who adjudicated the

- 8 -

1    grievance, the complainants alleged that 'there was an ongoing and continuing
2    issue relative to a difference of personalities between the four sergeants' and
3    Lieutenant Kimball. Mankin continued: 'It was the impression of the four
4    sergeants that the interaction between themselves and Lieutenant Kimball had
5    risen to a level so as to impact the operational efficiency and effectiveness of the
6    units over which Lieutenant Kimball had managerial oversight.' The sergeants
7    requested that the department 1) remove Kimball from command of the SEB; 2)
8    formally investigate the charges contained in their grievance; 3) place Kimball on
9    a '[w]ork performance contract'; 4) order Kimball to attend '[i]nterpersonal
10   relations training'; and 5) monitor Kimball's conduct in the future." Id. at 705-06.
11          The sergeants were not satisfied, and thus filed a formal grievance, alleging
12   a "hostile work environment by his repeated violations" of various internal SBPD
13   policies. The grievance also accused Billdt and Mankin of perpetuating this
14   environment by "fail[ing] to take appropriate action." Id. at 706. The plaintiffs
15   each provided declarations supporting their grievance.
16          Plaintiff Desrochers stated that "Lt. Kimball is a very autocratic, controlling
17   and critical supervisor. Everyone that works for him has felt the stress that he
18   brings to every situation [ . . . ] He controls and manipulates every conversation
19   until it concludes to his satisfaction. He absolutely discourages any dissention
20   [sic] from his opinion and gives the definite sense that anyone that disagrees with
21   his approach is incompetent . . . . He operates in the belief that everyone around
22   him is incompetent and that, without his influence, the police department would
23   quickly fail." The other plaintiff, Sergeant Lowes, "asserted that Kimball's
24   'approach and tactics were destroying the moral [sic] and confidence of his
25   men.'" Id. at 706. This included "Kimball "chew[ing] out" Lowes in front of
26   members of the Rialto Police Department, implying that the other department was
27   incompeten[t]." Id. Ultimately, the two officers opined that Lieutenant Kimball's
28

- 9 -

1   actions were having a negative effect on the unit's confidence and functionality.

2   The grievance was ultimately denied. Id. at 707.

3       Against this background, the Ninth Circuit flatly rejected a First

4   Amendment claim by these two police officers, stating:

5         "Desrochers and Lowes attempt to characterize their grievances as

6         necessarily implicating issues such as the "competency,"

7         "preparedness," "efficiency," and "morale" of the SBPD. We are not

8         persuaded. **We have never held that a simple reference to**

9         **government functioning automatically qualifies as speech on a**

10        **matter of public concern**. To the contrary, as we have recently

11        indicated, **the fact that speech contains "passing references to**

12        **public safety[,] incidental to the message conveyed" weighs**

13        **against a finding of public concern . . . . The reality that poor**

14        **interpersonal relationships amongst coworkers might hamper the**

15        **work of a government office does not automatically transform**

16        **speech on such issues into speech on a matter of public concern.**"

17        Id. at 710-11 (emphasis added).

18  The Ninth Circuit went on to state that "[t]he speech in question is largely devoid

19  of reference to matters we have deemed to be of public concern. There are no

20  allegations of conduct amounting to 'actual or potential wrongdoing or breach of

21  public trust.' One can read the grievances and conclude that Kimball was arrogant,

22  Boom was irreverent, and Mankin and Billdt disagreed with the sergeants'

23  assessment of their lieutenants, but that does not mean they were incompetent, and

24  it certainly does not mean that they were malfeasant." Id.

25      Just like in Connick, the conduct in Desrochers goes far beyond the

26  plaintiff's skeletal allegations here. Ruetz does not suggest that he was

27  intimidated by superiors or that their perceived irreverence impacted his speech.

28  He simply contends that he could not communicate with colleagues while on

- 10 -

1   administrative leave after a separate and distinct law enforcement agency returned

2   search warrants against him, which had the merely incidental impact of hindering

3   his union efforts. [SAC 25-27]. **Even more undercutting of the public concern**

4   **element is that in the case at bench, there is not even a hint of an**

5   **undercurrent as to any function of government.**

6       Additionally, in Havekost v. United States Dept. of Navy, 925 F.2d 316 (9th

7   Cir. 1991), the Ninth Circuit again held as a matter of law that the type of conduct

8   alleged by Plaintiff Ruetz is not actionable under the First Amendment.  There,

9   after a new superior:

10      "Took charge of the commissary in 1988, [Plaintiff] Havekost grew

11          dissatisfied with what she and other baggers perceived to be

12          [Defendant Supervisor] Banzon's attempts to exercise direct

13          supervisory authority over them.  She objected to his insistence that

14          baggers honor the Navy's newly implemented dress code for

15          'employees.'  She also objected to Banzon's proposal to increase the

16          number of baggers scheduled per shift and to hold baggers financially

17          responsible for groceries missing or damaged by bagging or carryout

18          operations.  Havekost voiced these objections at a meeting attended

19          by Banzon and fellow baggers.  Havekost next decided that the head

20          bagger was failing to perform her duty to represent the baggers'

21          collective interests to Banzon and initiated a petition for her discharge.

22          The circulation of the petition apparently triggered a discussion

23          between Havekost and Banzon, who then revoked Havekost's license"

24          to work.

25  Id. at 317.  Again, the Ninth Circuit readily disposed of the action as a matter of

26  law, noting that "Havekost's speech was as much a matter of public concern as

27  would be the length and distribution of coffee breaks.  The petition was circulated

28  exclusively among the baggers; Havekost made no attempt to reach the general

- 11 -

1   public, a factor considered relevant in other public concern cases. See, e.g.,

2   Barkoo v. Melby, 901 F.2d 613, 618–19 (7th Cir.1990) (suggesting that actual

3   communication with the press on an issue of some public interest would indicate

4   public speech).  Furthermore, the petition arose out of an internal dispute over the

5   Navy's dress code, scheduling, and responsibility for certain lost commissary

6   profits. These matters are the minutiae of workplace grievances." Id. at 319.

7        The non-presence of a matter of public concern in this case falls squarely in

8   line with that in Havekost.  Plaintiff's grievances were all internal, relating to the

9   authority of Trump and Vasquez [SAC, ¶¶ 23, 25-26.] Ruetz made no attempt to

10  reach the general public, not even bringing his concerns to the SMCCD Board of

11  Trustees or anyone outside his department. [See SAC, ¶¶ 19, 23-27.] Ruetz does

12  not even allege he discussed this with other employees, as the plaintiff did in

13  Havekost.   Whatever his personal animosities are towards Trump and Vasquez,

14  that does not transmute an otherwise purely internal power struggle into a matter

15  of public concern that the general public has any interest in.  Instead, this is the

16  bureaucratic minutia and attempts to produce a cause célèbre that is routinely

17  found to fall outside the First Amendment.  Accordingly, with Ruetz's assertions

18  failing to measure up to what was present in Havekost, Connick, and Desrochers,

19  the claim should be dismissed.

20       To the extent plaintiff suggests that his treatment lowered the morale of the

21  entire unit, which is alleged nowhere in the Second Amended Complaint, that

22  would merely be a passing reference to public safety, incidental to the message

23  conveyed.  Therefore in the words of the Ninth Circuit, it would weigh firmly

24  against a finding of public concern.  Instead, what is clear from both plaintiff's

25  original, First Amended, and Second Amended Complaint is that the alleged

26  statements were little more than personal disputes between Ruetz and his

27  superiors.  [SAC, ¶¶ 23-26].  As such, there is no element of public concern and

28  this claim should be dismissed.

1    McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir. 1983) provides further

2    insight into the lack of public concern here.  In that case, a police officer went to a

3    city council meeting to complain about not receiving an annual pay raise.  The

4    mayor "told plaintiff to 'shut up and sit down' and adjourned the meeting. Later

5    that evening plaintiff was permitted to speak at a second session, but the council

6    refused to respond to the issues he raised. The next day plaintiff was interviewed

7    by a Phoenix television station regarding the dispute . . . ." Id. at 1112.  At a

8    meeting the next day, the mayor indicated his desire to fire the officer, and

9    "suggested that a citizen's complaint alleging excessive force . . . be used as a

10   basis to fire plaintiff." Id at 1113.  Plaintiff was ultimately fired.  Id.

11       The Ninth Circuit began its analysis by stating that "to address a matter of

12   public concern, the content of the sergeant's speech must involve 'issues about

13   which information is needed or appropriate to enable the members of society to

14   make informed decisions about the operation of their government." Id. at 1114.

15   Speech that deals with "individual personnel disputes and grievances" and that

16   would be of "no relevance to the public's evaluation of the performance of

17   governmental agencies" is generally not of "public concern." Id.  The same is

18   true of "speech that relates to internal power struggles within the workplace," and

19   speech which is of no interest "beyond the employee's bureaucratic niche."

20   Tucker v. Cal. Dep't of Educ., 97 F.3d 1204, 1210 (9th Cir.1996).  The Court

21   concluded that because plaintiff "purposefully directed to the public both through

22   city council meetings and a television interview" as it related to "the ability of the

23   city to attract and retain qualified police personnel, and the competency of the

24   police force is surely a matter of great public concern."  Id. at 1114-15.

25       The situation in McKinley is not present in this case.  Plaintiff never

26   communicated with elected officials, let alone to a city at a city council meeting or

27   in a television interview.  Moreover, plaintiff never communicated concerns about

28   the ability to attract and retain qualified police personnel.  In this context, the

- 13 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

1    fundamental distinction between a city and a California community college

2    district is clear – college districts do not maintain typical police departments like

3    municipalities do, making <u>McKinley</u> entirely inapposite.  Instead, at most what

4    plaintiff has alleged are personal disputes between him and his superiors.  These

5    internal power struggles within the police department are of no consequence to the

6    general public and, therefore, statements made in that context are not entitled to

7    the heightened First Amendment protection.

8         Other matters that have been held to touch on public concern simply do not

9    exist in this case.  <u>See</u> <u>Rankin v. McPherson</u>, 483 U.S. 378, 380, 386 (1987) (on-

10   the-job statement in favor of President Reagan's assassination made by employee

11   of law enforcement agency); <u>Connick</u>, 461 U.S. at 149 (question by the assistant

12   district attorney about whether her coworkers "ever [felt] pressured to work in

13   political campaigns"); <u>Givhan v. Western Line Consolidated School Dist.</u>, 439

14   U.S. 410, 413 (1979) (public complaints about school board policies and

15   practices); <u>Mt. Healthy City School District Board of Ed. v. Doyle</u>, 429 U.S. 274,

16   282, 284 (1977) (memorandum given by a teacher to a radio station dealing with

17   teacher dress and appearance); <u>Perry v. Sindermann</u>, 408 U.S. 593, 595 (1972)

18   (legislative testimony of a state college teacher advocating that a particular

19   college be elevated to four-year status); <u>Pickering</u>, 391 U.S. at 571–72 (high

20   school teacher's criticism of Board of Education's allocation of school funds and

21   methods of informing taxpayers about the need for additional revenue).

22        Beyond Supreme Court precedent, the Ninth Circuit has found matters of

23   public concern in the following cases: <u>Finkelstein v. Bergna</u>, 881 F.2d 702, 703,

24   706 (9th Cir.1989) (deputy district attorney's express opposition to candidate for

25   district attorney of Santa Clara County); <u>Roth v. Veteran's Admin. of the Gov't of</u>

26   <u>the United States</u>, 856 F.2d 1401, 1406 (9th Cir. 1988), overruled in part on other

27   grounds by <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 417 (2006), (former

28   troubleshooter's allegations of waste, corruption, mismanagement, and inadequate

- 14 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

safety at the Veteran's Administration Medical Center in San Francisco); <u>Allen v. Scribner</u>, 812 F.2d 426, 427–28, 431 (9th Cir. 1987) (entomologist's allegation made to the press of breach of public trust by Mediterranean Fruit Fly Eradication Project management); <u>Anderson v. Central Point School Dist. No. 6</u>, 746 F.2d 505, 506–07 (9th Cir.1984) (assistant football coach's proposal at an open school board meeting attended by public to restructure the district's athletic program)

Beyond the specific cases discussed in detail above, what this survey of our jurisprudence demonstrably shows is that the plaintiff's actions do not touch on matters of public concern. Instead, the allegations in the Second Amended Complaint are entirely inapposite to the matters of corruption, public trust, political campaigning, public discourse at school board and city council meetings, and general waste that are the focus of the public concern element. With the allegations relating to recognized private interests and internal disputes, the motion to dismiss should be granted.

**2.     The First Amendment Claim Also Lacks Facial Plausibility Where The Plaintiff Has Pled Facts Showing He Would Have Been Subject to Administrative Action Regardless of His Past History Because He Was The Subject of a Criminal Investigation By The Santa Monica Police Department.**

Another consideration in the First Amendment retaliation context is "whether the state would have taken the adverse employment action even absent the protected speech." <u>Desrochers</u>, 572 F.3d at 709. Underlying this is that a public entity, as an employer, retains unique interests in regulating the activities of its own employees that are simply not evident with the regulation of the general populace. See <u>Kelley v. Johnson</u>, 425 U.S. 238, 244-45 (1976).

Here, it is readily apparent that Ruetz would have been placed on administrative leave after he became a suspect in a criminal case. [SAC, ¶ 27.]

- 15 -

1   The Santa Monica Police Department was able to obtain a search warrant for his

2   home, meaning a magistrate had already found probable cause to believe there was

3   evidence of a crime in Ruetz's posession.  Illinois v. Gates, 462 U.S. 213, 238

4   1983) ("The task of the issuing magistrate is simply to make a practical, common-

5   sense decision whether, given all the circumstances set forth in the affidavit before

6   him, including the 'veracity' and 'basis of knowledge' of persons supplying

7   hearsay information, there is a fair probability that contraband or evidence of a

8   crime will be found in a particular place.'"); CAL. PEN. CODE §§ 1523-1524

9   (outlining criteria for issuance of search warrants in California).

10          Instead, the directive demonstrates prudence.  It allows an investigation to

11  be carried out in a diligent and fair manner and helps to expunge the public

12  concern over corruption within public entities.  It simply is not facially plausible to

13  suggest otherwise, bringing centrally into focus the mandate of Iqbal.  By way of

14  comparison, it would certainly be a matter of public concern if a police agency

15  were to allow a person such as Ruetz who is the subject of a criminal prosecution

16  to continue working as a peace officer.  Beyond that, plaintiff is still afforded the

17  protection of the California Peace Officers Bill of Rights, which includes being

18  "informed of the nature of the investigation prior to any interrogation." CAL.

19  GOVT. CODE § 3303(c).  These protections and legitimate concerns more than meet

20  the deferential standard applied when a court is asked to rule upon a public entity's

21  personnel orders, even as framed solely by the plaintiff in the context of a motion

22  to dismiss.  Using Iqbal, when the "reasonable inferences" supporting plaintifsf

23  claim show only the "sheer possibility that a defendant acted unlawfully", the

24  present pleading standard has not been satisfied, as it does not show "plausibility"

25  of "entitlement to relief".  Iqbal, 129 S.Ct. at 1949.  Therefore, with the directive

26  seemingly happening regardless of Ruetz's past history, there is no retaliatory

27  nexus and the plaintiff's First Amendment rights cannot be considered to have

28  been violated.

- 16 -

### 3.     Plaintiff Has Failed to Plead A Facially Plausible Case For Establishing Liability Under <u>Monell</u>.

It should be noted from the outset that if the plaintiff's First Amendment claim is dismissed, the <u>Monell</u> claim must necessarily fail. <u>See</u> <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978).

Second, the unique dynamic of a California community college district necessarily comes into focus when discussing whether <u>Monell</u> liability can attach for the acts of Sergeant Trump and Chief Vasquez. For starters, community college districts must act through their board of trustees. <u>Education Code</u> § 70902. <u>See</u> EDUC. CODE § 70902(a)(1) ("Every community college district shall be under the control of a board of trustees, which is referred to herein as the 'governing board.'"). Moreover, the permissible establishment of a community college district police department is firmly subjected to the authority and control of the board. <u>See</u> CAL. EDUC. CODE §§ 72330-72332. With these key distinguishing traits, plaintiff cannot contend that a community college district, whose very operation is governed by Division 7 of the California Education Code (<u>Education Code</u> § 70900 *et seq.*), is similar to an independent municipality where <u>Monell</u> liability may attach for the acts of a chief of police. As such, the plaintiff's hallow assertion of authority is not sufficient to meet the facially plausible showing required under <u>Iqbal</u> and <u>Twombly</u>.

Furthermore, even if a plausible constitutional claim could be found relative to the individual defendants, the claim against SMCCD would still fail. In <u>Monell</u>, *supra*, the Supreme Court rejected the proposition that a governmental entity may be held liable under a respondeat superior theory for an injury caused solely by its employees or agents. Instead, the Court held that to maintain a cause of action against a governmental entity for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that the governmental entity had a "custom, practice, and policy" that led to a violation of the plaintiff's civil rights. <u>Id.</u> at 694.

- 17 -

1    Therefore, to succeed on a 42 U.S.C. § 1983 claim, the plaintiff must
2    produce facts to establish four elements: (1) he possessed a constitutional right of
3    which he was deprived; (2) the City had a custom, practice or policy; (3) the
4    custom, practice or policy of the City "amounts to deliberate indifference" to his
5    constitutional right; and (4) that the custom, practice or policy is the "moving force
6    behind the constitutional violation." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th
7    Cir. 1992).   In other words, the plaintiff must produce facts to show that SMCCD
8    instituted and maintains a custom, practice or policy that caused him to suffer a
9    constitutional violation. Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004).   The
10   plaintiffs cannot meet this burden unless they present evidence that would establish
11   "the existence of a widespread practice that . . . is so permanent and well-settled as
12   to constitute a 'custom or usage' with the force of law." Gillette v. Delmore, 979
13   F.2d 1342, 1349 (9th Cir. 1992).

14        Plaintiff's Second Amended Complaint contains no allegations of such
15   permanent and well-settled policies or conduct so as to impose Monell liability.   It
16   is entirely silent, except to state in a conclusory fashion that Chief Vasquez sets
17   SMCCD policy, something that is entirely outside the power of a California
18   Community College District Chief of Police.   [SAC, ¶ 79.]   Again, under Iqbal,
19   such a conclusory statement is not entitled to any weight and the Court need not
20   even decide if it is plausible before granting the motion.

21        **C.    Paragraph 27 of Plaintiff's Second Amended Complaint Cannot**
22             **Serve As The Basis for a Constitutional Claim Under the Noerr-**
23             **Pennington Doctrine.**

24        Prosecutors and members of the prosecutorial team (criminal investigators)
25   are immune from suit under federal law, regarding communications in
26   contemplation of court proceedings or incidental thereto, via the Noerr-Pennington
27   doctrine.   Government officials are entitled to Noerr-Pennington immunity as

28

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

1   public officials sued in their individual capacities. See <u>Mariana v. Fisher</u>, 338 F.3d
2   189, 199 (3d Cir. 2003).

3       In <u>Empress LLC v. City & County of San Francisco</u>, 419 F.3d 1052, (9th
4   Cir. 2005) the Ninth Circuit discussed the Noerr-Pennington immunity in the
5   context of the First Amendment right to petition the government for action
6   (prosecution), finding that "[a]lthough the Noerr-Pennington doctrine originally
7   immunized individuals and entities from antitrust liability, Noerr-Pennington
8   immunity now applies to claims under § 1983 that are based on the petitioning of
9   public authorities. 'Noerr-Pennington is a label for a form of First Amendment
10  protection; to say that one does not have Noerr-Pennington immunity is to
11  conclude that one's petitioning activity is unprotected by the First Amendment.'"
12  <u>Id.</u> at 1056.

13      Simply stated, the Noerr-Pennington Doctrine shields individuals from
14  liability where they urge public officials to take official action. See <u>Eastern R.R.</u>
15  <u>Presidents' Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961); <u>United</u>
16  <u>Mine Workers of America v. Pennington</u>. 381 U.S. 657 (1965); <u>California Motor</u>
17  <u>Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972) (extending the
18  *Noerr-Pennington* Doctrine to persons who petition courts as well as federal and
19  state administrative agencies).

20      With Paragraph 27 of the Second Amended Complaint relating wholly to
21  the Santa Monica Police Department petitioning the government for action in the
22  form of the issuance of a search warrant, an activity protected by the Noerr
23  Pennington Doctrine, it cannot serve as the basis for a constitutional violation
24  under the First Amendment violation.

25      **D.**    **<u>Alternatively, The Court Should Order That Plaintiff Provide A</u>**
26          **<u>More Definite Statement With Respect to the 1983 Cause of</u>**
27          **<u>Action.</u>**

28      Plaintiff's claim under 42 U.S.C. §1983 is pled against both individual and

- 19 -

1   SMCCD as an entity.  However, the basis for holding each defendant liable is

2   different, as SMCCD can only be liable under § 1983 if a <u>Monell</u> violation is

3   found.  Additionally, the basis for the claim is itself far from certain.

4         To address this, under Federal Rule of Civil Procedure 12(e) the plaintiff

5   should be required to provide a more definite statement separating out the

6   defendants into distinct causes of action, as they have different elements that must

7   be met before liability is imposed, in addition to unequivocally identifying the

8   matter of public concern he claims exists in this case.  <u>See</u> FED. R. CIV. PROC.

9   12(e) ("A party may move for a more definite statement of a pleading to which a

10  responsive pleading is allowed but which is so vague or ambiguous that the party

11  cannot reasonably prepare a response. The motion must . . . point out the defects

12  complained of and the details desired.")  If the Court is not inclined to dismiss the

13  plaintiff's third bite at the apple for failure to allege facts sufficient to support a

14  claim for relief, it is respectfully requested that the plaintiff be ordered to provide a

15  more definite statement.

16  **III.  CONCLUSION**

17        Based upon the foregoing, the defendants respectfully request that this Court

18  grant the instant Motion to Dismiss with prejudice without affording the plaintiff

19  the opportunity to amend.

20

21  DATED:  August 26, 2011         CARPENTER, ROTHANS & DUMONT

22

23                  By:  *Steven J Wysocky*

24                       LOUIS R. DUMONT

25                       JILL WILLIAMS BABINGTON

26                       STEVEN WYSOCKY
                         Attorneys for Defendants,

27

28

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT